IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———

DENNIS and PAMELA MONTOYA,
on behalf of J.M.,

    Plaintiffs/Appellees,

v.                                 No. CIV 06-200 and 06-209 BB/LAM
                                            (consolidated cases)

MARY AGNES MARTINEZ and
ESPANOLA PUBLIC SCHOOLS, et al.,

    Defendants/Appellants.

## MEMORANDUM OPINION AND ORDER

      As the Court noted in its recent opinion, this case consists of two consolidated actions. One of the cases was filed by Plaintiffs and is a lawsuit for damages arising out of alleged violations of several federal statutes. The other case was filed by Defendant Espanola Public Schools ("EPS") and is essentially an appeal of administrative decisions issued by an administrative officer ("AAO") appointed by the New Mexico Public Education Department. This opinion addresses motions filed by both parties that are relevant to the lawsuit for damages filed by Plaintiffs. The motions disposed of in this opinion include Plaintiffs' motion for partial summary judgment on Count I of Plaintiff's complaint (Doc. 117), a motion to dismiss or for summary judgment filed by EPS (Doc. 119), and a motion to amend the complaint by interlineation filed by Plaintiffs (Doc. 159). Defendant Martinez' motion for summary judgment will be dealt with in a subsequent opinion, as qualified-immunity issues require a different analysis.

1

The Court will not repeat the procedural history of this case outlined in the previous opinion, but will instead move directly to a consideration of the merits of the motions.

## DISCUSSION

**Motion to Amend By Interlineation:** Plaintiffs filed this lawsuit naming "Espanola Public Schools" as one of the two Defendants. In its answer, as the fourteenth affirmative defense, EPS stated that "Espanola Public Schools" is not an entity subject to suit. A short time later EPS, styled as "Espanola Public Schools Board of Education," filed its own action seeking judicial review of the adverse administrative decisions entered by the state administrative agency. The parties then litigated this case extensively without ever resolving the issue of whether EPS is an entity subject to suit, or whether the only proper institutional Defendant in this case is the EPS Board of Education. When the parties reached the stage of exchanging proposed sections of the pretrial order, in February 2008, EPS repeated its assertion that it is not an entity subject to suit under New Mexico law. In response, Plaintiffs did several things. First, they filed a motion to amend the complaint by interlineation. Next, they filed an entirely new lawsuit naming the EPS Board of Education as a defendant. *Montoya et al. v. Salazar et al.*, No. 08-cv-327 BB/KBM. Finally, in their interlineation-motion reply brief, they asserted that EPS actually is an entity subject to suit and that their request to amend by interlineation should be deemed unnecessary. EPS was allowed to file a sur-reply to respond to this new assertion, made for the first time in the reply brief. EPS continues to maintain it is not an entity subject to suit under New Mexico law.

The Court need not resolve the issue of whether EPS standing alone is an entity subject to suit, or whether the institutional Defendant in this case must be the EPS Board

2

of Education. Even if Plaintiffs did use the wrong name for the institutional Defendant, where there is no prejudice to such wrongly-named Defendant, leave to amend must be freely granted under Rule 15, FRCP. In fact, the failure to grant such permission has been considered reversible error by the Tenth Circuit. *See Maycher v. Muskogee Med. Ctr. Auxiliary*, 1997 WL 698007 (10th Cir. unpublished). Cases such as this one, in which a plaintiff may have made a mistake in determining the correct name of the official entity subject to suit, are the exact type of case in which Rule 15 should come into play. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 560 (7th Cir. 1996) ("The commentary to Rule 15(c) clearly indicates that the rule is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant."). EPS, or the EPS Board, at all times had notice of Plaintiffs' lawsuit and participated in it through counsel, and therefore cannot point to any prejudice resulting from Plaintiffs' alleged misnomer. The Court will not countenance EPS' effort to exploit the possible technical deficiency in Plaintiffs' pleadings. In fact, the Court considers EPS' effort to be a waste of the Court's and the parties' limited time and resources. To the extent it is necessary, Plaintiffs' motion to amend by interlineation will be granted, and it will be presumed that Plaintiffs have filed suit against an entity subject to suit under New Mexico law, whether that entity is technically EPS or the EPS Board.[1]

**Plaintiffs' Motion for Partial Summary Judgment:** This motion is reviewed under the normal rules applicable to summary-judgment matters. Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on

---

[1]The Court assumes this renders moot the new lawsuit filed by Plaintiffs, but will await submissions from the parties as to what action should be taken with respect to that lawsuit.

3

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). When viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587 (1986).

The main argument forming the basis of Plaintiffs' motion is their contention that some type of preclusive effect should be given to the results of the administrative proceedings that have already occurred. As noted in the previous opinion, a two-tiered administrative process was held addressing Plaintiffs' claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401*et seq.,* and under Section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794. Following that process, both the original hearing officer ("DPHO") and the administrative appellate review officer ("AAO") ruled in favor of Plaintiffs on both the IDEA issues and the Section 504 claim. Defendant EPS has filed an action in this Court challenging the administrative determinations, which has been consolidated with Plaintiffs' lawsuit seeking damages under Section 504, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. In their motion for partial summary judgment, Plaintiffs maintain that if and when this Court affirms the administrative decisions concerning IDEA and Section 504, those decisions should be given preclusive effect and would establish most, if not all, of the elements of their Section 504 and ADA claims for damages. Once such preclusive effect is granted,

contend Plaintiffs, they are entitled to summary judgment on the merits of their Section 504 and ADA claims, leaving only the question of damages to be litigated at trial.[2]

By Plaintiffs' own admission, this argument is dependent on the Court affirming the administrative decisions that have been issued concerning both the IDEA claim and the Section 504 claim. Since the Court has not yet finished its review of the administrative record, and has therefore not yet affirmed or reversed the administrative decisions, Plaintiffs' motion is premature and may be denied to the extent it rests on the preclusion argument. However, the parties should be aware that the Court has serious reservations about granting preclusive effect to the results of the due-process hearing that was held in this case, whether the Court ultimately affirms those results or reverses them.

It is true that several courts have held that when a district court finds, upon review of an administrative IDEA decision, that no IDEA violation has occurred, the district court's finding can have preclusive effect requiring dismissal of "redundant" claims under Section 504 or the ADA. *See, e.g., Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290-97 (5th Cir. 2005); *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 455 F.Supp.2d 1286, 1312-13 (D.N.M. 2006).[3] None of these cases, however, analyzed the question of whether New Mexico state courts would give preclusive effect to the results of an administrative process such as the IDEA due-process hearing and appellate review that

---

[2]In addition to the preclusion argument, Plaintiffs also present an "alternative" reason to grant summary judgment that is based on evidence in the record, not simply the administrative decisions. Although the Court may not completely understand Plaintiff's argument, the Court will attempt to address it briefly below.

[3]Where the IDEA issue and the claims under the other statutes arise in the same action, as is the case here, it is not clear whether the "proper" doctrine to apply would be law of the case, collateral estoppel, or res judicata. The cases discussing preclusive effect do not address that question and the Court need not decide it at this point.

5

was held in this case. As the parties have pointed out, since the administrative proceeding held here was a state proceeding, this Court is required to determine what New Mexico courts would decide concerning the preclusion issue. *See, e.g., Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986).[4] New Mexico courts consider several factors when deciding whether to grant preclusive effect to an administrative decision. These factors include the parties' incentive to litigate in the administrative forum, procedural differences between the administrative forum and a court, and policy considerations. *Padilla v. Intel Corp.*, 964 P.2d 862, 865(N.M. App. 1998). Applying these factors, courts in New Mexico have accorded preclusive effect to workers' compensation proceedings, and have denied such effect to the results of unemployment-compensation hearings. *See Padilla* (workers' compensation); *Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1002-05 (N.M. 1993) (unemployment compensation).

Procedurally, an IDEA due-process hearing falls somewhere between the workers'-compensation proceeding at issue in *Padilla* and the unemployment-compensation hearing considered by *Shovelin*. On the one hand, in IDEA proceedings parents are entitled to copies of all the school records pertaining to the student, which is a limited form of discovery. N.M. Admin. Code 6.31.2(I)(9). Parents are also entitled to compel the attendance of witnesses that are under the school's control, and to cross-examine those witnesses. *Id.* § (I)(16). Parents may be represented by counsel if they choose, and are entitled to at least five days' notice of any evidence the school plans to

---

[4] No party has discussed the possibility that this rule might change where, as here, the state administrative proceedings are reviewed by a federal court rather than a state court. Given the absence of argument from the parties, the Court has not investigated this issue.

6

present at the hearing. *Id.* On the other hand, due-process hearings are supposed to be scheduled so that a final decision can be reached within 45 days after the request for hearing is received.[5] 34 C.F.R. § 300.511. Furthermore, there is no provision in the rules governing due-process hearings that would allow depositions of the opposing party's witnesses, which would be difficult to accomplish in any event given the tight time-line established by the regulations. All in all, however, the procedural differences between IDEA proceedings and court actions are not so great as to cause the Court to refuse to grant preclusive effect to the results of IDEA proceedings on the basis of those procedural differences alone.

An issue of more concern to the Court is the question raised by EPS concerning policy considerations, which blends into the incentive-to-litigate factor. As EPS points out, the purpose of an IDEA due-process hearing should not be to find liability or fault, or establish an entitlement to monetary damages.[6] Instead, the purpose of such a proceeding is to provide a speedy resolution of the question of what type of educational assistance, if any, will best serve a possibly-disabled student. This is apparent from the extremely short deadlines established by the regulations, as well as simple logic. The faster a due-process hearing is held and resolved, the less time a floundering student will lose, and the more likely it will become that the student can be "saved" educationally by the receipt of needed services. Schools and parents should be encouraged to cooperate and negotiate mutually satisfactory resolutions to IDEA problems, rather than to litigate them as extensively as possible in the hope of obtaining a favorable resolution which can

---

[5] In this case, that 45-day deadline was extended by agreement of the parties.

[6] In fact, as the parties are well aware, monetary damages other than reimbursement for things like private schooling or special services are not recoverable under IDEA.

7

then be used for preclusive effect in a damages lawsuit filed subsequently. This type of policy concern was ultimately an important reason the New Mexico Supreme Court, in *Shovelin*, decided not to give preclusive effect to the results of unemployment-compensation hearings. 850 P.2d at 1004-05. The Supreme Court pointed out that the legislature's purpose in establishing the unemployment-compensation system was to speedily ensure that some type of limited benefits would be given to workers unemployed through no fault of their own. The Supreme Court also pointed out that if employers and workers knew the results of unemployment hearings would be given preclusive effect, they would have an incentive to turn the hearings into full-blown trials, which would "thwart the legislative intent that unemployment benefits quickly flow to those in need..." *Id.* at 1004. Similarly, Congress established the IDEA due-process system to ensure that students would be able to quickly resolve their IDEA issues and get the help they need. This intent will be thwarted if parents and schools become litigation-oriented at the due-process-hearing stage, in order to try to gain a significant advantage in future damages litigation.

      For the above reasons, the Court has serious doubt about whether IDEA administrative proceedings in general should be given preclusive effect in damages litigation filed pursuant to Section 504 or the ADA. Given the specific circumstances of this case, the Court has even more reservations about the preclusion issue. The question of whether to apply rules of preclusion is ultimately discretionary with a district court, and a court may legitimately decline to apply those rules in an individual case even if in general preclusion would be called for. *See United States v. Kaytso*, 868 F.2d 1020, 1022 (9th Cir.1988) (stating "[e]ven when the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the [court's] discretion"). There are

several issues concerning the due-process proceedings held in this case that give the Court pause in considering the preclusion question. First, Barbara Warren, an expert who evaluated Plaintiff Jeremy Montoya in 2002, did not testify at the hearing and therefore did not defend her report, which was adverse to Jeremy's IDEA eligibility.[7] Second, Mary Agnes Martinez, who was the special-education director at the time in question and allegedly played a key role in discriminating against Jeremy and in denying him services, also did not testify at the due-process hearing. Apparently Ms. Martinez, who is now a Defendant in Plaintiffs' lawsuit, is available to testify at the trial in this case.[8] Finally, Ruben Lucero, who testified as an EPS employee at the due-process hearing and placed much blame on Defendant Martinez, has apparently back-tracked at his deposition and changed his story about one incident, the infamous "white-out" occurrence. If there is a possibility that a witness' original version of events was not true, especially where the opposing party did not have an opportunity to depose the witness prior to that testimony, fairness requires that the original version not be required to be etched in stone but to be challenged at trial. For all of these reasons, although the Court need not definitively decide the issue at this point, it is likely the Court will not be giving preclusive effect to

---

[7] As the Court explained in the previous opinion, the reason she did not testify is unclear, with Plaintiffs blaming EPS and EPS blaming the fact she was undergoing treatment for cancer.

[8] Again, the reasons for Defendant Martinez' failure to testify during the administrative proceedings are unclear. There is a suggestion of severe friction between Martinez and EPS, as Martinez apparently felt she was being made a scapegoat for the special-education difficulties EPS was experiencing at the time in question. The fact remains, however, that she is a key witness in this matter. Furthermore, she is now a Defendant at least with respect to Plaintiffs' § 1983 claims, although she cannot be held liable individually for the Section 504 claim or the ADA claim. Applying rules of preclusion would therefore lead to the possibility of inconsistent factual findings in the same case – after hearing her testimony, the jury could find she did not discriminate against Jeremy, while giving preclusive effect to the results of the administrative proceedings would most likely require a conclusion that she did do so.

9

the results of the administrative proceedings that occurred in this case, whether the Court affirms those results or reverses them following a review of the administrative record.

As noted above, Plaintiffs have raised an argument in support of summary judgment that does not depend on the preclusion argument. This argument appears to be based mainly on reports issued by the New Mexico Public Education Department ("NMPED") following a procedure called "focused monitoring." These reports were highly critical of the EPS special-education department in several respects, and in particular criticized the management style employed by Defendant Martinez. However, after reciting a number of findings taken from the reports, and other facts that purport to show that EPS did nothing to respond to the criticisms found in the reports, Plaintiffs did not provide any argument as to how these facts would entitle them to summary judgment. Plaintiffs did not tie their arguments about the special-education program in general to any specific action relevant to Plaintiffs' claims.[9] It is therefore difficult for the Court to discern the actual argument Plaintiffs are attempting to make, and the Court will not grant summary judgment on the basis of their "alternative" argument.

**EPS Motion to Dismiss or for Summary Judgment:** EPS has filed a motion requesting dismissal for failure to state a claim, or in the alternative summary judgment, as to all of the damages claims raised by Plaintiffs. In support of that motion EPS has proffered a number or arguments, some of which are purely legal contentions and some

---

[9]It is not sufficient to simply state that the time period involved in the focused monitoring is the same time period during which Jeremy's statutory rights were allegedly violated. Plaintiffs must point to something in the reports that specifically concerns Jeremy, rather than the special-education program as a whole. Furthermore, although Plaintiffs contend the reports establish that EPS had knowledge of specific problems and failed to respond in any way to fix those problems, again the reports contain no specific information about Jeremy himself.

of which are factual.  As discussed below, none of these arguments justify the relief requested by EPS.

**Claim Preclusion/Res Judicata:**  EPS contends that Plaintiffs should be barred from pursuing their lawsuit for damages under Section 504 and the ADA because they requested relief under these statutes during the administrative proceedings.  EPS maintains Plaintiffs chose to pursue these claims in the administrative forum even though that forum could provide no relief at all under the ADA and could provide only equitable relief under Section 504.  By choosing to pursue the claims in a limited forum, argues EPS, Plaintiffs limited themselves to whatever relief could be provided by that forum, and are barred from pursuing any additional relief by way of their lawsuit for damages.  The argument EPS makes is based on the doctrine of claim preclusion, otherwise known as res judicata.  Under that doctrine, if a party brings one action arising out of a certain set of facts, and litigates that action to its conclusion, the party is then precluded from bringing another action arising out of the same set of facts, even if the party requests different relief or raises different legal arguments in the subsequent action.  *See Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 864-65 (7th Cir. 1996); *Ford v. New Mexico Dep't of Pub. Safety*, 891 P.2d 546, 555 (N.M. App. 1994).  This doctrine can apply, under the right circumstances, where a party chooses initially to proceed in an administrative forum and subsequently decides to pursue an action in court.  *Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 626-27 (7th Cir. 1996).

One major problem with EPS' argument is that it is directly contrary to the controlling federal law, and therefore Congressional intent.  In the IDEA statute, Congress specifically stated that nothing in the statute should be construed to restrict a student's rights under the ADA, Section 504, or other federal laws protecting the rights of

11

students with disabilities, "except that before the filing of a civil action under such laws...[the IDEA administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [IDEA]." 20 U.S.C. § 1415(l). In other words, plaintiff students who wish to file a lawsuit for damages under the ADA or Section 504 must first do exactly what Plaintiffs did in this case: proceed before an administrative tribunal. Once the administrative remedies have been exhausted, they may then file their civil action for damages.[10] The Court will certainly not dismiss a lawsuit that is expressly allowed under federal law, where Plaintiffs have followed exactly the procedure required by that law.

In fact, under the line of authority relied on by EPS such a result would not be warranted in any event. The preclusion argued for by EPS only occurs "if the plaintiff's choice of fora really is unconstrained." *Waid, supra,* 91 F.3d at 865. Where the plaintiff is forced to file some claims in an administrative forum that cannot give full relief on all of the plaintiff's claims, no preclusion will occur. *Id.* As explained above, that is the case here – Plaintiffs were not allowed to file a civil action under the ADA, Section 504, or other federal statutes until they first exhausted their administrative remedies through the IDEA proceeding. Plaintiffs are therefore not precluded in any way from now pursuing their federal-court lawsuit for damages.

**Undisputed Facts Show No Statutory Violations:** EPS contends there is no evidence in this case that could give rise to liability under Section 504, the ADA, or §

---

[10]This requirement only applies if the ADA and Section 504 claims are based on allegations that would also be actionable under IDEA. If the student's claims are not connected to rights granted by IDEA, exhaustion is not required. *See Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1280-81 (10th Cir. 2007). No argument has been made in this case that Plaintiffs' claims are not "educational in nature" and would therefore not be subject to relief under IDEA. *See id.*

1983. EPS reaches that conclusion by reciting only the evidence that supports its position, and by discounting some evidence (in particular, Ruben Lucero's testimony at the due-process hearing) that is contrary to that position. However, the Court is required to view the evidence in the light most favorable to the party resisting the motion for summary judgment, not the party advancing that motion. In this light, the testimony presented on behalf of Plaintiffs at the IDEA due-process hearing, the expert reports submitted during that proceeding, and other evidence submitted as attachments to Plaintiffs' briefs in this case, are sufficient to establish a prima facie case of liability under Section 504 and the ADA. EPS has in turn presented evidence that would negate its liability under those statutes. Therefore, summary judgment cannot be granted to either side and a jury must resolve the factual conflicts.

**Statute of Limitations:** EPS maintains that a three-year limitations period applies to Plaintiffs' claims, and that any claims that are based on events that occurred more than three years prior to the filing of Plaintiffs' complaint should not be entertained. In response, Plaintiffs do not dispute the assertion that a three-year limitations period is applicable to claims brought under Section 504, the ADA, and § 1983. However, Plaintiffs point out that Jeremy Montoya was a minor at the time the lawsuit was filed, and contend he is entitled to take advantage of a New Mexico statute tolling all limitations periods for minors. NMSA § 37-1-10. As to Jeremy, then, Plaintiffs argue there is no issue concerning expiration of a limitations period. In reply, EPS concedes that the tolling provision of § 37-1-10 might normally apply, but argues (without citing to any authority) that the result is different in this case because Jeremy's parents did not fail to enforce his rights, but actually filed the instant lawsuit while Jeremy was a minor. In other words, EPS advances a position that is somewhat difficult to defend logically: that

13

a minor whose parent does not file suit on his behalf is not subject to any limitations period until one year after his minority ends, while a minor whose parent does file an action on his behalf will have his claims restricted by a three-year limitations period.

For obvious reasons, the law is contrary to EPS on this issue. A tolling statute remains applicable to a minor, regardless of whether the minor's parents bring a next-friend action on behalf of the minor. *See, e.g., Rachal v. O'Neil*, 925 A.2d 920, 924-25 (R.I. 2007); *Henry ex rel. Henry v. City of New York*, 724 N.E.2d 372 (1999); *cf. Elgin v. Bartlett*, 994 P.2d 411, 415 (Colo. 1999) (by statute, appointment of legal representative by court would end tolling of limitations period; however, next-friend action by minor's parents did not have that effect). As to Plaintiff Jeremy Montoya, therefore, EPS' limitations argument must fail.

**Failure to Exhaust Remedies:** EPS contends that Plaintiffs will attempt to base at least part of their claims on events that occurred after May 17, 2005, the date Plaintiffs filed their request for a due-process hearing. EPS does not identify the events to which this argument might pertain. Therefore, even though Plaintiffs did not respond to this argument, the Court declines to rule on it in the abstract. Should specific examples of later-occurring-conduct arise during the course of trial, EPS is free to raise the failure-to-exhaust defense at that time.

**§ 1983 Claims:** In one paragraph, citing no legal authority, EPS makes an argument that Plaintiffs have failed to establish their procedural-due-process and substantive-due-process claims. The Court will not search for authority to support or refute EPS' contention, and will not rule on this argument at this time. Instead, the constitutional claims will be addressed in the opinion concerning Defendant Martinez'

motion for summary judgment, as the constitutional issues have actually been briefed in that motion.

## CONCLUSION

Based on the foregoing discussion, the Court will consider Plaintiffs' lawsuit to have been filed against the appropriate EPS entity that is subject to suit under New Mexico law.  In addition, the Court will deny the substantive motions filed by both Plaintiffs and EPS.

## ORDER

Based on the foregoing memorandum opinion, it is ORDERED that Plaintiffs' motion to amend the complaint by interlineation (Doc. 159) be, and hereby is, GRANTED to the extent it is necessary; it is also ORDERED that Plaintiffs' motion for partial summary judgment (Doc. 117) be, and hereby is, DENIED;  and it is ORDERED that the motion to dismiss or for summary judgment filed by EPS (Doc. 119) be, and hereby is, DENIED.

Dated this 15th day of May, 2008.

_____
**BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE**